IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA MILITARY AUTHORITY,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-414**      (JCN: 2024029594)

**JOSEPH BROGAN,**
**Claimant Below, Respondent**

**FILED**
**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner West Virginia Military Authority ("WVMA") appeals the September 30, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Joseph Brogan timely filed a response.[1] WVMA did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Brogan is employed as a squad leader at the Mountaineer Challenge Academy ("MCA"). Mr. Brogan's job duties include, among other things, providing 24-hour supervision of the MCA's cadets. Mr. Brogan alleges that he sustained an injury to his left ankle in the course of and resulting from his employment on January 7, 2024.

Mr. Brogan completed an undated West Virginia Workers' Compensation Employees' and Physician's Report of Occupational Injury or Disease, alleging that he sustained an injury to his left ankle while trying to break up a fight between two students at work on January 7, 2024. The physician's section of the report was not completed.

About a month before the compensable injury, on December 3, 2023, Mr. Brogan was seen at Montgomery General Hospital ("MGH") for complaints of left ankle pain. Mr.

---

[1] WVMA is represented by James W. Heslep, Esq., and Steven K. Wellman, Esq. Mr. Brogan is represented by G. Patrick Jacobs, Esq.

Brogan reported a history of right ankle pain, and indicated he was currently being treated by a podiatrist and receiving regular injections. Mr. Brogan reported an onset of left ankle pain over the past several days with no known injury. A physical examination revealed edema to the left lateral medial malleolus of the left lower extremity with some tenderness to palpation. X-rays of the left ankle taken on December 3, 2023, revealed soft tissue swelling about the ankle and degenerative changes. The assessment was left ankle pain.

On December 5, 2023, Mr. Brogan presented to Douglas Dockery, DPM, with a chief complaint of pain in the left lateral dorsal foot and left medial plantar midfoot. Mr. Brogan reported that the symptoms began gradually and had been present for one week. Dr. Dockery assessed Mr. Brogan with bilateral sinus tarsitis, primary osteoarthritis of the left ankle and foot, and primary osteoarthritis of the right ankle and foot. He recommended an orthotic foot insert. On January 2, 2024, Mr. Brogan followed up with Dr. Dockery. The assessment was bilateral sinus tarsitis, primary osteoarthritis of the left ankle and foot, and primary osteoarthritis of the right ankle and foot. Mr. Brogan was prescribed Voltaren gel for his arthritic pain.

Following the compensable injury, on January 25, 2024, Mr. Brogan was seen by Seth Craft, DPM, for his bilateral sinus tarsitis and bilateral foot and ankle osteoarthritis. Dr. Craft recommended MRI studies of the left foot and ankle. Mr. Brogan was scanned for custom orthotics and instructed to bring his work boots in for the next appointment for evaluation.

Mr. Brogan underwent a left ankle MRI on February 22, 2024, revealing the following findings: 1) abnormally edematous lateral malleolus, medial malleolus, posterior talus, os trigonum, portions of calcaneus, and proximal fourth metatarsal compatible with stress-related change; 2) moderate posterior subtalar osteoarthritis; 3) chronic plantar fasciitis; 4) several small low-grade partial tears of the distal Achilles tendon; and 5) scarring on mild partial tear of deltoid ligament. A left foot MRI performed on the same day revealed a stress-related change in the proximal third and fourth metatarsals.

On February 27, 2024, and March 6, 2024, Mr. Brogan returned to MGH for left ankle pain. Mr. Brogan reported chronic problems following a left ankle fracture at age sixteen. Mr. Brogan further reported that he had sustained a new injury to his left ankle approximately three months ago while breaking up a fight at work, and he stated that his left ankle pain worsened following the work injury. Mr. Brogan was assessed with chronic pain of the left ankle, arthritis of the subtalar joint, and arthritis of the left foot. Mr. Brogan was fitted with a cam walker boot, and surgical options were discussed. Mr. Brogan was seen by Dr. Dockery on October 8, 2024. The assessment was bilateral sinus tarsitis and strain of the left Achilles tendon. Dr. Dockery prescribed meloxicam and ordered an MRI of Mr. Brogan's left foot and/or ankle.

An Encova Claim Filing Form dated October 8, 2024, indicates that Mr. Brogan was employed as a squad leader at MCA, and his job duties included providing twenty-four-hour, seven days a week supervision of the MCA cadets. Mr. Brogan reported that he injured his left/foot ankle on January 7, 2024, while attempting to stop a fight between two cadets. Mr. Brogan described his injury as a strain of the left Achilles tendon and sprain of the deltoid ligament of the left ankle. An Employers' Report of Occupational Injury or Disease dated October 10, 2024, indicates that: 1) Mr. Brogan sustained a left foot/ankle sprain while trying to break up a fight between two cadets on January 7, 2024; 2) Mr. Brogan notified the employer of his work injury on January 18, 2024; and 3) the employer had no reason to question Mr. Brogan's reported work injury.

On November 24, 2024, a second MRI of Mr. Brogan's left ankle was performed, revealing: 1) worsening of talar dome and neck edema when compared to a prior left ankle MRI of February 22, 2024; 2) advanced arthropathy of the posterior subtalar joint space; 3) tendinopathy of the Achilles tendon; 4) intact tendons about the ankle mortise with tedinopathy and peritendinitis of the left peroneus brevis tendon below the lateral malleolus; 5) intact ligaments about the ankle mortise with medial gutter inflammation; and 6) mild plantar fasciitis and intratendinous ossific bodies.

Mr. Brogan returned to Dr. Dockery on December 10, 2024, for reevaluation and treatment following the November 24, 2024, left ankle MRI. Dr. Dockery noted that Mr. Brogan's left ankle MRI revealed a 3.5 cm intrasubstance tear of the Achilles tendon, and he opined that the intrasubstance Achilles tear seen on the MRI was directly related to Mr. Brogan's work injury of January 7, 2024. The assessment was strain of unspecified Achilles tendon. Dr. Dockery stated that Mr. Brogan could return to modified duty work with the following restrictions: no carrying of more than fifteen pounds; no carrying for further than twenty-five feet; and no climbing, kneeling, squatting, lifting from floor to waist, lifting from waist to overhead, using his feet to pull anything over fifteen pounds, or standing for more than ten minutes in one spot.

On December 18, 2024, James Dauphin, M.D., completed a physician review report. Dr. Dauphin recommended that Mr. Brogan's claim be denied due to a lack of detail on the first report of injury form, an "incorrect diagnosis" listed on the form, and a six-month gap in medical treatment.

On January 21, 2025, Mr. Brogan followed up with Dr. Dockery, who noted that Mr. Brogan had developed pain in his left Achilles and left heel after breaking up a fight at work. He further noted that Mr. Brogan's symptoms had been present for a year, but that Mr. Brogan felt his symptoms were improving. Dr. Dockery assessed Mr. Brogan with a strain of unspecified Achilles tendon, and he again opined that recent imaging evidence of an intrasubstance tear of Mr. Brogan's left Achilles tendon was directly related to Mr. Brogan's work injury of January 7, 2024.

3

Mr. Brogan was deposed on May 8, 2025, and testified that, on January 7, 2024, he was trying to break up a fight between two cadets. He stated that during the fight one of the cadets pushed him fifteen to twenty feet down a hallway before he was able to pin the cadet against the wall. Mr. Brogan testified that he radioed for assistance, but he had to keep the cadet pinned up against the wall until his supervisor arrived to assist him. Following that incident, Mr. Brogan stated that he developed progressively worsening pain, numbness, tingling, and swelling in his left ankle. He testified that he notified his supervisor of the left ankle injury and completed paperwork regarding the injury on the day of the injury. Mr. Brogan stated that he completed his shift and reported to work the next day. The day following the incident, Mr. Brogan stated that he was still having difficulty walking on the left ankle and, when asked, his supervisor and Assistant Commandant both informed him that the appropriate paperwork had been filed. Mr. Brogan testified that he attempted to keep working on the ankle and did not seek medical treatment for a couple of weeks, but he sought medical treatment after he realized that his left ankle was progressively worsening. Mr. Brogan stated that he sought treatment at MGH, where he underwent an MRI of his left ankle/foot, and he was instructed to follow up with Dr. Dockery, his treating podiatrist.

Mr. Brogan testified that Dr. Dockery reviewed the MRI and diagnosed a tear in the Achilles tendon of Mr. Brogan's left foot. Mr. Brogan stated that Dr. Dockery treated his left ankle symptoms with injections, which were never required prior to the work injury of January 7, 2024. Mr. Brogan testified that when he was sixteen years old, he broke his left ankle playing football, and that injury healed in time, but his doctor informed him that he would likely develop arthritis in the ankle. Mr. Brogan further testified that Dr. Dockery treated him approximately twice a year for his right and left ankle/foot before the injury of January 7, 2024. Mr. Brogan stated that he was never taken off work by Dr. Dockery for his left ankle prior to the work injury of January 7, 2024, and he was also able to perform his full range of his work duties and was not under any restrictions regarding his left ankle prior to the work injury. Mr. Brogan testified that, following the January 7, 2024, work injury, he had difficulty performing his job duties at MCA. Further, Mr. Brogan testified that although he had symptoms in his left foot/ankle prior to the January 7, 2024, work injury, his left ankle symptoms became much worse after the injury.

On September 30, 2025, the Board reversed the claim administrator's order, which rejected the claim. The Board found that Mr. Brogan established by a preponderance of evidence that he sustained a strain of the left Achilles tendon in the course of and resulting from his employment. WVMA now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

4

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WVMA argues that the Board's order "harkens to a time when the worker's compensation jurisprudence was governed by a long-since abolished principle known as the 'rule of liberality.'" WVMA further argues that Mr. Brogan's delay in reporting his injury diluted his credibility. Additionally, WVMA argues that the Board held the claim compensable solely based on one physician examining Mr. Brogan nine months after the injury occurred. Finally, WVMA argues that it has rebutted the presumption set forth in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022).[2] We disagree.

Three elements must coexist in workers' compensation cases to establish compensability: (1) a personal injury (2) received in the course of employment and (3)

---

[2] In *Moore*, the Supreme Court of Appeals of West Virginia ("SCAWV") held:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Moore* at 294, 879 S.E.2d at 781, syl. pt. 5.

resulting from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

The SCAWV held in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3.

Here, the Board found Mr. Brogan's deposition testimony credible, and it determined that a preponderance of the evidence establishes that Mr. Brogan sustained a strain of the left Achilles tendon in the course of and resulting from his employment. As to Mr. Brogan's prior symptoms, the Board noted that he was treated for symptoms associated with bilateral sinus tarsitis and primary osteoarthritis of the left foot and ankle prior to the alleged work injury. However, the Board analyzed the claim under *Moore* and found that there was no evidence that the partial tearing of the Achilles tendon predated the injury. In support of this finding, the Board noted that Mr. Brogan's left ankle symptoms worsened following the injury, and Dr. Dockery's medical opinion that the left Achilles tendon strain was directly related to the work injury. As to Mr. Brogan's "delay" in reporting the injury, the Board found that Mr. Brogan reported the injury to MCA no later than January 18, 2024. The Board noted that:

> Although W.Va. C.S.R. § 85-1-3.1 states that a claimant should provide notice of the injury to the employer within two working days of the injury, it also states that "under no circumstances shall the fact that notice of an occupational injury was provided by the claimant later than two (2) working days from the time of the injury be the sole basis for denial of a claim."

Further, the Board found that "the weight of the evidence supports a finding that a compensable injury occurred, and pursuant to W.Va. C.S.R. § 85-1-3.1, the claim cannot be rejected based solely upon a finding that the claimant did not report the injury with two working days."

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Brogan sustained a left Achilles tendon strain in the course of and as a result of his employment. As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and

capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which rejected the claim. Further, contrary to WVMA's argument that the Board decided this claim under the "rule of liberality," there is no indication that such occurred. There is adequate evidence to support the Board's findings.

Accordingly, we affirm the Board's September 30, 2025, order.

Affirmed.

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

7